**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case No. 6:25-cr-278-AGM-RMN**

**EDWIN GUERRERO**

**Defendant.**

**_______________________________/**

## SENTENCING MEMORANDUM

Edwin Guerrero (hereinafter referred to as "Mr. Guerrero"), was charged in the instant case with two counts of 18 U.S.C. s. 875(c). These crimes occurred over a two day period beginning on August 14 and ending on August 15, 2024. Two days later, on August 17, 2024, Mr. Guerrero was interviewed by agents from the Florida Department of Law Enforcement (FDLE) regarding posts made on August 14th and August 15th. Mr. Gurrero confessed to agents that he had sent the posts on those dates. Mr. Guerrero was arrested and charged by the State of Florida with numerous charges relating to his posts. PSR, para. 43. Mr. Guerrero wanted to plea guilty to the state charges and agreed to plead guilty to the state charges. The State of Florida agreed to recommend a sentence of thirty months followed by a term or probation. On the day before the guilty plea, the state of Florida revoked their plea

agreement. Two weeks later, Guerrero was indicted by a federal grand jury in the instant case. The State of Florida charges are still pending.

As with the state case, Guerrero indicated, through his attorney, that he wanted to plea guilty to the federal charges in the instant case. On March 23, 2026, Mr. Guerrero pled guilty to both counts of the indictment. His case is scheduled for sentencing on September 22, 2026. Mr. Guerrero has been in continuous custody for the past 25 months.

When Guerrero pled guilty in this case, he pled straight up without a plea agreement. As reported in the PSR, during his interview with the probation officer, Guerrero expressed remorse for his crimes and apologized to the victims. PSR, para. 14.

Mr. Guerrero pled guilty to both counts of the Indictment, without a plea agreement, has accepted responsibility and stands ready to accept his punishment. The Presentence Report ("PSR") sets forth a guideline range of forty-one to fifty-one months and reflects a criminal history category I, with zero criminal history points. PSR ¶ 68. The PSR also shows that Mr. Guerrero is 26 years and had never before been convicted or arrested for any criminal activity. The undersigned requests that this court sentence Mr. Guerrero to a reasonable sentence which takes into account the advisory guideline range, as well as all of the factors which the court must consider, pursuant to 18 U.S.C. § 3553(a)(1-7).

The defense has made objections to the pre-sentence report, which are reflected in the addendum to the pre-sentence report.

## MR. GUERRERO'S HISTORY AND CHARACTERISTICS

Edwin Guerrero's life has been difficult. He did not have a traditional upbringing with both parents. In fact, neither parent showed any interest in Guerrero in his younger years. He was born on August 10, 2000, to Vanessa Alvarado and Santos Guerrero in Lowell, Massachusetts. PSR ¶ 45. He did not meet his mother until he was eight years old. She was often in jail during his childhood. When he was two years old, his mother relinquished custody of Mr. Guerrero. PSR ¶ 48. Mr. Guerrero's maternal grandparents, Vigdalia Medina and Sebastian Alvarado, took custody of him and his sister, Silvia Aria, and became their primary caregivers. PSR ¶ 47. Mr. Guerrero's father, Santos Guerrero, also was incarcerated during much of his childhood and was absent during most of his formative years. PSR, para. 48.

Mr. Guerrero grew up only with his grandparents and his sister. His grandfather was his only father figure and, when he passed away, it devastated Mr. Guerrero. After his death, Vigdalia Medina moved Mr. Guerrero and his sister back to Lowell, Massachusetts. His grandmother struggled after his grandfather died, so they never had a stable residence and frequently dealt with power outages and food insecurity due to lack of finances. *Id.*

Mr. Guerrero never truly felt he could lean on anyone, not even his own parents, to deal with these emotions and by age twelve, he began experiencing depression. PSR ¶ 54. Despite his struggles, Mr. Guerrero participated in

many sports in high school and excelled in shop classes including auto repair, carpentry, machine tech, painting and design, and masonry. He graduated from Greater Lowell Technical High School in 2018 receiving his diploma and also receiving a certificate in machine technology. PSR ¶ 58.

Gurrero has been successfully employed since high school. From 2017 until 2020, Guerrero worked full time as a cook at Little Caesers in Massachusetts. PSR, para. 63. He left that job for full time employment in January, 2021, as a machine operator for Alpine Precision. PSR, para. 62. He earned $22 an hour in that job. He left Alpine Precision for a higher paying job as a machine operator, in 2024, at Tecomet, in Andover, Massachusetts. PSR, para. 61. Mr. Guerrero has demonstrated a strong work ethic while continuing to develop valuable technical skills and a lasting commitment to the skilled trades. PSR ¶ 61. He has worked hard to overcome his childhood years and he has become a self sufficient and productive person.

As stated previously, since his arrest in August of 2024, Mr. Guerrero has remained in custody regarding the underlying offense. He has demonstrated significant remorse for his actions. While he has been incarcerated, the person he was closest to, his grandmother, died unexpectedly. Mr. Guerrero's status as an inmate left him unable to attend his grandmother's funeral and left him to mourn and grieve her loss alone. He always remained

close with her despite being incarcerated and her death has impacted him significantly.

The people in Edwin Guerrero's life who mean the most to him have written letters to this court. His grandmother, Vigdalia Medina, wrote her letter before she died this past Summer. Other family members, such as his aunt, his sister and two of his cousins have written letters on his behalf. In their letters they state their love and support for Mr. Guerrero while also acknowledging that what he did in this case was truly wrong and inexcusable. They know he is a better person than the words he uttered in August, 2024. They know that he will move forward in the right direction with their help and support. As a result of these charges, his mother has finally come back into his life to be supportive of Mr. Guerrero while he is going through this process.

## REQUEST FOR A REASONABLE SENTENCE

All federal sentences should be "sufficient but not greater than necessary," provide for "adequate deterrence," "protect the public," and promote rehabilitation. 18 U.S.C. §3553(a)(2). Given Mr. Guerrero's history and characteristics, the facts and circumstances of his actions and his sincere remorse for committing these crimes, he requests that this court impose a reasonable sentence. He has been incarcerated in two different county jails (Brevard and Seminole County Jails) for more than two years. As the court is aware, serving time in the county jail is not the same as serving time in prison.

In prison, inmates can take educational and vocational programs, can work a job and can receive counseling and assistance from trained therapists and have a certain amount of freedom of movement within the institution. None of these things are true in a county jail, where one is housed in a pod for most of the day and work opportunities are non existent.

There is no doubt that Mr. Guerrero's threats in this case were inexcusable. He committed two crimes and he deserves to be punished for those crimes. As this Court is aware, the court must impose a sentence which promotes respect for the law, provides just punishment, affords deterrence and protects the public from future crimes of the defendant. The undersigned would submit that Guerrero has learned his lesson and that there is no evidence that a reasonable sentence in this case would jeopardize the public or cause future harm to the victims of these crimes. Guerrero's history shows that he knows how to follow the rules, he knows how to follow the law and he knows that he can never engage in this type, or any type, of criminal activity again.

In determining a reasonable sentence in this case, the court must also avoid unwarranted sentencing disparities among similarly situated defendants. While no two cases are ever the same, the undersigned is providing to this court several similar cases involving true threats and the sentences imposed by courts in those cases.

The cases summarized below involve defendants convicted under 18 U.S.C. §875 (c) who were scored under U.S.S.G §2A6.1 with similar guideline calculations to Mr. Guerrero. Each case began with a base offense level of 12, including a two-level enhancement under §2A6.1 (b)(2) for involving more than two threats, and applied a six-level official-victim enhancement under §3A1.1(a). The defendants had a final offense level of 17 and a Criminal History Category of I, for a sentencing range of 24 to 30 months. In none of the cases below did the defendant receive an enhancement for Hate Crime Motivation, pursuant to USSG s. 3A1.1(a). All of these defendants received downward variances or departures. The cases are summarized below.

**Case Number: 5:23-cr-00239-R-1: (*United States v. Marshall*)**

**Conduct:** On or about May 15 and May 16, 2023, the defendant made multiple posts on Twitter threatening to kill Oklahoma Governor Kevin Stitt, Arkansas Governor Sarah Huckabee Sanders, and United States Senator Ted Cruz.

**Context and Threats:** The defendant posted these threats as direct replies to Governor Stitt's public Twitter account, including in response to posts depicting personal and family-related content. These messages included:

- In response to a photo Governor Kevin Stitt had tweeted of his mother, wife, and daughters in honor of Mother's Day: "So sad they will be shot with you"
- In response to other posts on Governor Kevin Stitt personal account, the defendant made the following 6 replies:
  - "can't wait to watch you die"

- “You will look good with a hole in your head”
    - “I’m gonna shoot you on the street when I see you. Hope your dumb family isn’t with you. I can’t wait. See you Sunday”
    - “It’s really easy to get guns in Oklahoma. Can’t wait to shoot you.”
    - “I will be at your next event with a gun. Can’t wait to see your blood.”
    - “I know your address. How was the chicken? Can’t wait to murder you.”
    - “Misplaced a bomb”
    - “I’ll see you dead in your home.

- In response to a post United States Senator Ted Cruz, the defendant replied directly to Senator Cruz’s Twitter account as follows:
    - “I’m gonna shoot you soon.”

- In response to a post Governor Sarah Huckabee Sanders, the defendant posted the following reply to Governor Sander’s Twitter account:
    - “Can’t wait to murder your family. See you soon.

**Additional facts:** The defendant acknowledged creating the account and making the posts, stating that he had done so to “troll people online”, and reported that some of the conduct occurred while he was intoxicated. The defendant further stated to the interviewing agent that “I would never do that” and “I don’t have a gun, and described himself as not being a violent person. The defendant pleaded guilty to Count Two of the two-count indictment pursuant to a plea agreement.

**Sentence:** 12 months and 1 day.

**Case Number: 3:22-cr-00115-BKS-1: (*United States v. Morelli*)**

**Conduct**: On or about March 3, 2022, the defendant made multiple telephone calls and left threatening voicemail messages directed to the Washington, D.C. office of United States Congresswoman Marjorie Taylor Greene.

**Context and Threats:** The defendant placed calls to Congresswoman Greene's office and left multiple voicemail message containing threats to harm and kill her.

The messages include:

- In a voicemail message left directly for Congresswoman Taylor Greene at approximately 11:11 pm, the defendant stated: "Yeah, I just don't think I can go on letting you, you know, cause hatred and poison to people. I really think I'm gonna have to cause you harm – physical harm… I'm gonna have to take your life into my own hands. Yeah, I would really, really caution you not to cause someone to harm someone else because of your evilness… You know, you can file charges, and we can go to court. I can tell them what a cunt you are and how bad you are for humanity. You're a pile of shit, and if you keep up this hatred and people get hurt, I'm gonna hurt you. Physically, I'm gonna harm you. Okay, scum bag?"

- In a second voicemail message left at approximately 11:18 p.m., the defendant stated:

  "My name is Joesph Morelli, M-O-R-E-L-L-I. I live in the Binghamton area of New York… 'Majory', whatever the hell your name is, redneck, you promote violence, and I think as a true patriot and humanitarian and human being, I think I'm gonna have to show you, to your face, right up front, what

violence truly is, and I don't think you're gonna like it. You've got a big fucking mouth, and I'm gonna show you what violence is really about. Okay dummy? Hey man, I can have anyone to come to you. I can pay someone 500 bucks to take a baseball bat and crack your skull. These goofs can do 20 years standing on their head… I'll get someone, scum bag. Keep spreading that hate, bitch. See what the fuck happens to you. You are going to get fucking physically hurt."

- Additional statements included:
  "I'm gonna have to hurt you physically"
  "I'm gonna make sure that, even if they lock me up, someone's gonna get you."

The defendant left a total of seven (7) threatening voicemail messages over March 3 and March 4, 2022, all directed at the congressional office. These messages also included threats to harm law enforcement if they responded.

**Additional facts:** The calls were placed from a telephone number associated with the defendant in Endicott, New York, and were transmitted to Washington, D.C. in interstate commerce. The threats were reported to the United States Capitol Police, which initiated an investigation in coordination with the FBI. The defendant pleaded guilty to Counts One, Two, and Three of the indictment pursuant to a plea agreement.

The government, in its sentencing memorandum, emphasized that although the defendant was assigned a Criminal History category I, his criminal history included prior convictions for similar harassing behavior that did score under the Guidelines, as well as documented aggressive conduct

toward a New York state judge, the City of Tonawanda Police Department, and the FBI.

The defendant's sentencing memorandum explained that the defendant isolated himself. On the night of the offense, the defendant was alone in his apartment watching political videos on YouTube, including content involving inflammatory rhetoric, which contributed to his decision to make the calls.

**Sentence:** 3 months on each count of prison, to run concurrently with each other.

**Case Number: 9:22-cr-80084-RLR-1: (*United States v. Comiskey*)**

**Conduct:** On or about August 31, September 8, September 15, and September 17, 2021, the defendant made multiple posts on Twitter containing threats to kill and injure United States Congresswoman Lauren Boebert.

**Context and Threats:** The defendant made multiple threats in posts on Twitter directed at the congresswoman across several dates. The statements were not made in a generalized manner on his page; rather they were direct specially at the Congresswoman, as reflected by the defendant posting them as direct replies to her account (i.e., "replying to @laurenboebert").

These messages include:

- In posts directed at the Congresswoman, the defendant stated:
- "If I ever saw Lauren I'd be glad to take her out and go to prison. Would be job well done"

- “Don’t worry Lauren, someone is coming soon to show your face the 2nd amendment in practice with a copper jacket. Enjoy”
- “Someone needs to put Lauren down like a sick dog. She is a true waste of life! Someone exercise their 2nd amendment right to her face! Since the @CIA is a failure and @FBI is incompetent at charging her for being a terrorist it’s time to do it ourselves! Pew pew Lauren”
- “I got my 2nd amendment tool all ready to destroy Lauren’s face! Hopefully in front of her kids”
- “…Wish you would respond but don’t come to Florida us libs have big guns here and we stand our ground. Take you down like Trayvon”
- “If I saw you on the street I wouldn’t hesitate to take you out! It is my given right as an American to protect from terrorists and treasonous people such as yourself. Something needs to be done to stop you from taking each breath”

**Additional facts:** The defendant acknowledged creating and using the account and admitted to making statements with knowledge they would be viewed as threats. The defendant pleaded guilty to one Count of the indictment pursuant to a plea agreement (Counts 2-5 dismissed).

**Sentence:** 15 months of imprisonment

**Case Number: 3:21-cr-000230-JWD-SDJ-1: (*United States v. Walsh*)**

**Conduct**: On or about March 24, 2021, the defendant transmitted interstate communications via email, sending a series of messages containing threats to injure agents of the Federal Bureau of Investigation (FBI) and other individuals.

**Context and Threats:** The defendant sent multiple emails as part of a single email chain to approximately 51 recipients, including individuals located outside the state of Louisiana. These emails were sent following the defendant's interaction with FBI agents and included statements directed at the FBI and others.

The first email message included:

- "THEY THREATENED ME" "I THREATEN THE BACK"
- "I WILL CUT YOUR BALLS OFF AND FEED THEM TO THE FLOWERS AND SLIT YOUR BABY OUT OF YOUR PREGANTS WIFE BELLY AND WATER THE FLOWERS WITH YOUR FAGGOT SON'S BLOOD"
- "DO YOU HEAR ME FBI" …" COME AFTER ME ON A SIDEWALK" "I WILLL CUT YOUR BALLS OFF AND FEED IT TO THE FLOWERS"
- "YOU SHOULD ALL TAKE A CHEESE GRATER TO YOUR FACE"

In another email, within the same chain, the message included:

- "I WILL KILL YOUR FAMILY" "PUT IT IN WRITING"

In a second email, the defendant messages included:

- "WHOEVER CAME AFTER ME HAS A THROAT TO BE SLIT AND A BLOOD TO BE BLED ON A SIDEWALK"
- "TAKE A CHEESE GRATER TO YOUR FACE"

In this second email chain, the defendant also sent the following message:

- "I WILL SLIT YOUR THROAT AND WATCH YOU BLEED OUT THAT IS A PROMISE"

**Additional facts:** The defendant used a consistent email account to send the communications and included multiple receipts in the email chain. Prior to

sending the emails, the defendant had contract with FBI agents on LSU's campus and later reported that interaction to the FBI National Threat Operations Center. The defendant was identified as the sender of the emails. The defendant plead guilty to Count One of the indictment pursuant to a plea agreement.

**Sentence:** 15 months of imprisonment

**Case Number: 1:21-cr-00072-JTN-1: (*United States v. Matsudo*)**

**Conduct:** Between December 2020 and March 2021, the defendant posted a series of threatening communications on the FBI's official Facebook page using the account name "Tom Matsudo". These communications were transmitted in interstate commerce via the internet.

**Context and Threats**: The defendant repeatedly posted comments directed at the FBI and its personnel on the FBI's Facebook page. These posts occurred over multiple days and concluded references to firearms and threats of violence. The statements included:

- "I OWN PEPPER SPRAY AND GUNS. EXPECT TO BE FACING THE GUN"
- "LOOK AT ME I AM THE VERY ANGRY MAN WITH A LOADED AR15 WILLING TO SHOOT YOU THE CHILD GROOMING SEX ABUSING FAKE COPS DEAD. I WOULD RATHER SHOOT YOU THE GANG STALKING FBI AGENT IN THE HEAD WITH MY 30-06 AND LEAVE YOU IN A DITCH TO ROT."
- "MY GUN IS LOADED AND POINTING AT YOU FAKE COP IDIOTS"

- "LOOK AT ME A LAODED AR 15 AND I AM ANGRY AS HELL READY TO TAKE REVENGE ON ANYONE IN MY WAY"

The defendant made approximately 15 posts on the FBI's Facebook page over a short period, many of which contained similar language and references to firearms and violence.

**Additional facts:** the defendant admitted to ownership of the Facebook account used to make the posts. He had previously contacted the FBI National Threats Operations Center (NTOC) and was interviewed by an FBI agent on January 4, 2021, during which he was advised to stop posting threatening messages. During that interview, the defendant stated that he owned multiple firearms, including a rifle and several handguns, and that he regularly carried a firearm. Law enforcement records confirmed that the defendant possessed multiple registered firearms and held a concealed pistol license. Despite the warning, the defendant continued posting threatening messages afterward. The defendant pleaded guilty to count two of the indictment pursuant to a plea agreement.

**Sentence:** 1 day, with credit for time served.

**Case Number: 8:25-cr-00103-CEH-TGW-1: (*United States v. Rubin*)**

**Conduct:** During February 2025, the defendant posted multiple threatening communications on Facebook directed at United States government officials,

political figures, and their family members. These communications were transmitted through interstate commerce via the internet.

**Context and Threats**: the defendant made a series of escalating, politically motivated threats over a short period of time. His statements targeted specific individuals, government officials, and buildings, and included both direct threats of violence and broader calls for assassination and destruction.

The statements included:

- "THESE NAZI BASTARDS IN OUR GOVT. WILL GET A RUDE AWAKENING. EVEN THE JEWISH NAZIS. DO YOU HEAR US [VICTIM 1]? 666." VICTIM 1 is a U.S. government official.
- "CRASH YOUR TESLAS INTO GOVT. BUILDINGS. KILL [VICTIM 2] THE NAZI BASTARD. IF YOU ARE JEWISH YOU SHOULD BE WORRIED. GET YOUR WEAPONS READY. CIVIL WAR IS UPON US". VICTIM 2 is the C.E.O. of a major US company who has been working with the current presidential administration
- "[VICTIM 3] WILL BE ASSASSINATED". VICTIM 3 is a U.S. government officials
- "THE ONLY WAY TO GET RID OF A CULT IS BY KILLING THE LEADERS."
- "ALL THESE MAGA HEADS IN U.S. WILL BE ASSASSINATED IN ABOUT 6 MONTHS. THAT IS ABSOLUTE!"
- [VICTIM 2] WILL BE KILLED WITHIN THE NEXT MONTH!" "[VICTIM 2] WILL LOSE HIS BODYGUARDS IN A SHOOTOUT WITH EX MARINE SNIPERS."
- "I shot my tv when [VICTIM 4] appeared in an ad on illegals. Next time I see her in person the shots will be for her". VICTIM 4 is a U.S. government official.
- "WE ARE GOING TO BLOW UP TRUMP TOWER SOON.I IT WILL BE ANOTHER LIKE IN OKLAHOMA"

- “KILL [FAMILY MEMBER OF THE PRESIDENT OF THE U.S. 1] AND [FAMILY MEMBER OF THE PRESIDENT OF THE U.S. 2]”
- “[U.S. GOVERNMENT OFFICAL 3] is going to lose his family soon”
- “[FAMILY MEMBER OF THE PRESIDENT OF THE U.S. 3] and [FAMILY MEMBER OF THE PRESIDENT OF THE U.S. 4] will be assassinated”
- “[U.S. GOVERNMENT OFFICAL 4] DO YOU LOVE YOUR WIFE SHE WILL BE ASSASSINATED UNLESS YOU QUIT”
- “HEY DONALD TRUMP! YOUR GRANDDAUGHTER [NAME] WILL BE A TARGET ON THE GOLF COURSE SOON.”

**Additional facts:** The case arose in the Middle District of Florida. The defendant admitted to making the posts. The posts were made over multiple days and included both generalized calls for violence and specific threats directed at identifiable individuals and locations. The defendant referenced a well-known act of domestic terrorism (the Oklahoma City bombing) in connection with threat to bomb Trump Tower.

During a voluntary interview with law enforcement, the defendant stated that he made the posts of political frustration and claimed he did not intend to engage in violence. The defendant entered a plea agreement to Counts One and Three of the indictment.

**Sentence:** 12 months and 1 day of imprisonment.

**Case Number: 625-cr-162-RBD-DCI *(United States v. Biddle)***

**Conduct:** The defendant pled guilty, in count one, to threatening President Donald Trump. In Count Two, he was charged with threatening Congressman Randy Fine.

As to the threats to President Trump, the defendant, whose handle was "@tyrantkiller76," posted: "Shut up before you end up like Kennedy you f***ing jews worshipping tyrant. Your a f***ing disgrace and a liar."

As to threats to Congressman Fine, the defendant posted: "You're a disgusting Jew and will be convicted of your crimes. I'm warning you now, stop being a tyrant and f***ing over Americans or else will not like what will happen."

Additionally, the Defendant, with respect to Congressman Fine, kept posting questions asking where Congressman Fine lived.

**Sentencing Guideline Range: 30 to 37 months**

**Sentence: One year of probation.**

**Case Number: 8:25-cr-00387-VMC-NHA (*United States v. Bailey*)**

Like the defendants in the cases summarized above, Terrell Bailey was convicted under 18 U.S.C. §875 (c), scored under U.S.S.G. §2A6.1, and received the same enhancement for multiple threats and an official victim, resulting in an identical total offense level of 17 and Criminal History Category I. Mr. Bailey's case is similar to the ones previously mentioned. In his threats, which occurred over a month long period of time, Bailey constantly referenced

wanting to kill Jewish people. In one posting, he said: "F***ing Jews, f***ing jew listens, f***ing Jew capitulators, f***ing Jew security, they can all f***ing die," and also: "Desire to kill Jews intensifies."

**Sentence: 15 months of imprisonment**

The factual summaries above further reflect that those defendants engaged in conduct involving repeated threats, direct communications to public officials, and in several instances, additional aggravating circumstances such as prior similar conduct, possession of firearms, or continued threats after law enforcement intervention.

In the instant case, the threats alleged in counts one and two occurred over a two day period: August 14th to 15th. Some posting, without threats, occurred on August 10th. When confronted by law enforcement, Guerrero immediately confessed and admitted that he went too far with his posts. Unlike some of the above cases, there were no threats made after law enforcement intervention, nor were there additional aggravating circumstances. There is no evidence that Guerrero owned a gun and no evidence that he had ever been to Florida and had planned to go to Florida.

Mr. Guerrero has been incarcerated for twenty-five months and has zero criminal history points as a first-time offender. Mr. Guerrero has never acted violently and has been successfully employed his entire adult life. A sentence of time served, followed by a period of supervised release, would effectively

protect the community along with special conditions that require him to participate in mental health treatment.

Wherefore, the Defendant, Edwin Guerrero, respectfully requests that this Court impose a time served sentence in this case, followed by a period of supervised release.

Respectfully submitted,

Charles L. Pritchard, Jr.
Federal Public Defender
Middle District of Florida

***/s/ James T. Skuthan***
James T. Skuthan
First Assistant Federal Public Defender
Florida Bar No. 0544124
201 South Orange Avenue, Suite 300
Orlando, FL 32801
Tel: 407-648-6338/Fax: 407-648-6095
E-Mail: jim_skuthan@fd.org