UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 6:25-cr-00278-AGM-RMN

EDWIN GUERRERO

## UNITED STATES' SENTENCING MEMORANDUM







Above are just two of the threats posted by the defendant under his username @currymvp2000. Beginning on or about August 14, 2024, and continuing through

on or about August 15, 2024, the defendant posted threats on X against Victim 1, Minor Victim 1, and Minor Victim 2. Victim 1 was a Florida State Representative at the time of the threats. Victim 1 is currently a United States Representative.

The defendant's offense level is 22 and his criminal history category is 1. This makes his advisory guidelines 41 to 51 months in the Bureau of Prisons. The United States respectfully requests a sentence of 41 months' imprisonment in this case, on the grounds that it will achieve the purposes of sentencing because it will reflect the seriousness of the defendant's offense of conviction and relevant conduct, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.

## BACKGROUND

Between on or about August 10, 2024, and August 15, 2024, the defendant made a series of antisemitic posts and threats directed at Victim 1 using the X account @currymvp200. Doc. 29. The posts include the following:

**August 10, 2024**

- *"I proudly and openly hate Jews …"* from an IP address in Spain.
- *"You mad cause no one wants you dirty pedos go back to whatever concentration camp you came from dirty ass rat…"* from an IP address in Spain.
- *"This is what happens when you keep Jews around theirs a reason no one wants those dirty rats."* from an IP address in Spain.

**August 14, 2024, to August 15, 2024**

- *"Looks like I'm taking a little field trip to brevard county Florida let's play a game @Vote[Victim 1]!"* from an IP address in Spain. Attached to the post is a photo of an individual holding what appears to be a firearm. *See* Exhibit 1.
- *"We're gonna find you."* from an IP address in Spain. Attached to the post is the same photo of an individual holding what appears to be a firearm. *See* Exhibit 2.
- *"Someone should kill [Victim 1]"* from an IP address in Spain. *See* Exhibit 3.
- *"@Vote[Victim 1] when he steps out in Florida don't worry your 2 little precious. Jewish boys will suffer the same fate."* from an IP address in Spain. Attached to the post is a photo of a deceased male with significant head trauma. *Id.*
- *"This is gonna be [Victim 1] very very soon ... see you in Florida !"* from an IP address in Spain. Attached to the post is the same photo of a deceased male with significant head trauma. *See* Exhibit 4.
- *"HEADSHOT ... boy in the strip pajamas... just upgraded to boy with this missing kippa."* from an IP address in Spain. *Id*.
- *"Why don't you show us where you're at? @Vote[Victim 1] your scared of getting your brains blown in ? Don't worry we'll make sure your sons watch ..."* from an IP address in Spain. *See* Exhibit 3.
- *"Jews are a stain to the world"* in response to a post regarding Anne Frank, from an IP address in Spain.

The above posts show that the defendant's conduct goes well beyond the posts that were listed in the Indictments and filed in the Notice of Maximum Penalties. Docs. 1, 29.

On August 14, 2024, these threats were referred to the Florida Department of Law Enforcement (FDLE). Because of the nature of the threats, SA Christopher Imel immediately took steps to identify the user of the @currymvp2000 account. After submitting exigent requests to X, Yahoo, and T-Mobile he was able to identify the defendant as the subscriber/user of the account.

Thereafter, SA Imel reviewed a public Instagram account, @edwin.guerrero._. Between August 9, 2024, and August 16, 2024, the defendant posted pictures and videos of himself on this account. The photos and videos contain identifiable landmarks in Spain. Notably, posts made from the @currymvp2000 account during this timeframe resolve to IP addresses in Spain. Border crossing records for the defendant show that he departed Boston for Barcelona, Spain on August 7, 2024, and he returned on August 17, 2024.

Pursuant to a local arrest warrant, the defendant was detained upon the defendant's return to the United States. While detained, the defendant agreed to a post-*Miranda* recorded interview. During the interview, the defendant confirmed that the X account, @currymvp2000, belonged to him. He admitted that he used the account to "troll" individuals regarding sports and politics, particularly the Israeli Palestinian conflict. He stated he likes to "trigger" people. He further admitted to using the account to send the above threatening messages to Victim 1. He stated that

he did not own the firearm pictured in the posts or any other firearms, and he found the photo on Google. He stated that he found the picture of the deceased male on X. The defendant stated that the threats and antisemitic messages were jokes, that he went too far in his messaging, and that he only wanted to anger Victim 1.

In addition to being arrested, the defendant's phone was seized and subsequently searched pursuant to a local search warrant for the device. The defendant confirmed that the seized phone was the same device he used to send the threatening communications. A forensic review of the phone uncovered a search history containing antisemitic and anti-Israel content, including "israel should burn in hell" and "israel's right to rape." Additionally, the defendant used the phone to message individuals anti-Israel and antisemitic messages, including, "Hope you get raped you dirty Jewish bitch," "Filthy Jew get the fuck out of my country before we fucking rape you unconscious you dirty fucking Jew," and "Dirty Jew step into isreal and get raped you faggot you people should have been completely exterminated. I'm glad your women got raped and headshot I hope more October 7ths happen until youre crappy religion is completely whipped out you Jews should have been exterminated like the rats you are A LONG TIME AGO."

## PRESENTENCE INVESTIGATION REPORT OBJECTIONS[1]

United States Probation has determined that the defendant's offense level is 22. *See* PSR ¶¶ 38, 68. The U.S. Probation office determined that grouping the offense levels for counts one and two of the indictment was improper according to United States Sentencing Guidelines ("USSG") § 3D1.2(d) and USSG §2A6.1, application note 3. *Id.* at ¶ 16. The defense argues that Victim 1 is the primary victim for count two, and, thus, is the same victim for Counts One and Two. The defense asserts that the minor victims were secondary victims. The United States agrees with the U.S. Probation Office's assessment that the counts cannot be grouped. The defendant specifically threatened the minor victims in Count Two of the indictment. Doc. 1. The assertion that the minor victims were chosen because of their familial relationship with Victim 1 does not negate their status as victims nor does the fact that Victim 1 was also threatened.

The U.S. Probation office applied a three-level enhancement to the defendant's offense level in accordance with the victim related adjustment enhancement under USSG § 3A1.1(a). *See* PSR at ¶ 26. The defense disagrees with this enhancement and argues that the defendant made threats against Victim 1 because of the content of Victim 1's social media posts on X. The defense also asserts that the defendant chose Minor Victim 1 and Minor Victim 2 because of their

[1] This information and arguments are more thoroughly discussed in the United States response to the defendant's objections attached to the final PSR that will be provided to the Court by the U.S. Probation office in this case.

relationship to Victim 1 and not their religion. The United States agrees with the U.S. Probation Office's assessment that the three-level enhancement under USSG § 3A1.1(a) applies in this case. As shown above, the defendant specifically stated, "…*Jewish boys will suffer the same fate*," when communicating the threat in Count Two of the indictment. The defendant using the minor victims' religion in the threat corroborates that they were targeted due to their religion. Additionally, the defendant admitted that he targeted the victim(s) because of their religion. Other antisemitic posts made by the defendant found during the forensic review of the defendant's cellphone also show that Victim 1 and the minor victims were targeted due to their religion.

U.S. Probation applied a six-level enhancement to the defendant's offense level in accordance with the victim related adjustment enhancement under USSG § 3A1.2(a)(1). PSR ¶ 20. The defense disagrees with this enhancement and argues that the defendant threatened Victim 1 and the minor victims because of the content of Victim 1's social media posts not because Victim 1 was a Florida State Representative.

The United States agrees with the U.S. Probation Office's assessment that the six-level enhancement under USSG § 3A1.2(a)(1) applies in this case because (1) the victim was a government officer or employee and (2) the offense of conviction was motivated by such status. It is undisputed that Victim 1 was in fact a government officer or employee at the time the defendant sent the threats. As mentioned previously, Victim 1 was a member of the Florida House of Representatives at the

time that the offense was committed. The defendant's threats are specific. The threats are specifically directed toward Victim 1's using the X handle, @Vote[Victim 1]. A handle that indicates that Victim 1 is a government officer or employee. Additionally, the defendant admitted to looking up Victim 1, thus he knew his status and decided to target him because of it and his dislike for Victim 1's political stance. The defense provided posts that Victim 1 posted on X prior to the defendant threatening Victim 1 and the minor victims. Each of the posts provided were made from Victim 1's official X handle. The defendant knew Victim 1 was a government officer and chose to threaten him because he disagreed with Victim 1's official position on the ongoing international conflicts.

Finally, U.S. Probation determined that the defendant was not eligible a reduction under USSG § 4C1.1 (Adjustment for Certain Zero-Point Offenders) because he used violence or credible threats of violence in connection with the offense. USSG § 4C1.1(a)(3). PSR ¶ 35. The defendant disagrees with this determination and asserts that the defendant did not use credible threats of violence. The defendant highlights that the defendant was out of the country at the time that he communicated the threats and that there was no evidence that the defendant knew or tracked down the location of the victims. The United States agrees with the U.S. Probation Office's assessment that the defendant does not qualify for a reduction under USSG § 4C1.1(a)(3).

It does not matter if the defendant had the ability to carry out the threat. That determination is not what makes a threat a credible threat. In June of 2023, the

Supreme Court addressed the issue of *mens rea* in threats cases in *Counterman v. Colorado*, 600 U.S. 66 (2023). In that case, the Supreme Court of the United States found that for a threat to qualify as a true threat, there must be subjective *mens rea*. *See id.* The Supreme Court of the United States set that standard at recklessness. *See id.* Justice Kagan, writing for the majority opinion, explained that in the context of true threats, a person acts recklessly when he "is aware that others could regard his statements as threatening violence and delivers them anyway." *Id*. Here, it is clear that the defendant's threats amount to serious expression of an intent to commit an act of unlawful violence toward Victim 1 and the minor victims. The threats are accompanied by photos of firearms or dead bodies. The threats also reference locations where Victim 1 is likely to be found (Florida). The defendant's threats were credible enough not only to make Victim 1 fear for his safety but also to activate an immediate investigation by law enforcement.

According, the United States requests that the Court overrule the defendant's objections and find that each enhancement recommended by U.S. Probation is applicable in this case.

## **ARGUMENT**

In sentencing a criminal defendant, the Court must consider the advisory guidelines range and the factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1253-54 (11th Cir. 2015). The Section 3553(a) analysis begins with the Court's

consideration of the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Moreover, the sentence imposed should (1) adequately reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, (4) afford adequate deterrence, (5) protect the public from future crimes of the defendant, and (6) provide the defendant with any necessary training or treatment. *See* 18 U.S.C. § 3553(a)(2). The court should also consider the kinds of sentences available, any pertinent policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* at (a)(3)-(6).

A. The Nature and Circumstances of the Offenses

The nature, circumstances, and extent of the Defendant's criminal offenses are extremely serious and weigh in favor of a guidelines sentence. *See* 18 U.S.C. § 3553(a)(1). The defendant made several threats against Victim 1 knowing that a reasonable person could regard his posts as threatening violence against a public official and that official's children. He also threatened Minor Victim 1 and Minor Victim 2. The defendant's posts concerning Victim 1 did not stop at just the stated threats, but they went further by implying that the defendant would come to Brevard, Florida with a firearm. The defendant told Victim 1 that Victim 1 will be found, stating that he knows where Victim 1 lives, etc. *See* Exhibits 1, 2, 3. These threats caused significant fear for Victim 1 and the minor victims. Being a public official, Victim 1 expects to be subjected to bad behavior by the public, but in Victim 1's own words, "I may be a politician, but my children are just regular people" and the

defendant's words concerning them "…made my blood run cold." The defendant's threats were credible threats of violence.

B. The History and Characteristics of the Defendant

The Defendant's history and characteristics also weigh in favor of the sentence that the United States seeks. While the defendant does not have any criminal history, the threats charged in the indictment are not the sum of all his threatening communication. As seen in the exhibits provided and in the background section of this memorandum, the defendant had a pattern of posting and sending threatening communications online especially antisemitic threats. The defendant admitted to this behavior, and he admitted that he did it to "trigger" and "anger" others. However, these threats are illegal, and they cause more harm than just angering others.

The Defendant's youth, lack of criminal history and acceptance of guilt are certainly factors for the Court's consideration in fashioning an appropriate sentence, and the United States has seriously considered those factors as well in making its sentencing recommendation. It is because of those reasons that the United States is not requesting an upward variance in this case.

C. Just Punishment, Adequate Deterrence, Respect for the Law, and Protection of the Public

The requested sentence meets the sentencing goals of adequate deterrence, respect for the law, protection of the public, and just punishment in this case. All of which are particularly weighty factors in this case. The section 3553(a) factors that the court must consider encompass both specific and general deterrence. *See United*

*States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022). To begin with, specific deterrence—that is, deterring this defendant from continuing to engage in criminal conduct when he is released from prison—is a crucial consideration in this case. As noted above, the defendant threatened not only Victim 1 but Victim 1's children as well. He also posted a firearm when posting about Victim 1's location. Lastly, the defendant's threats were hateful. Considering these facts, a prison sentence is necessary to ensure that this defendant learns that serious criminal conduct will be met by serious punishment.

General deterrence is also an essential consideration in fashioning a sentence in this case. The Eleventh Circuit has emphasized that "Congress, the United States Sentencing Commission, and this Court have all decided that general deterrence is a critical factor that must be considered and should play a role in sentencing defendants." *Id.* at 208. The Tenth Circuit articulated the importance of a meaningful sentence in the consideration of general deterrence in this way:

"General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015).

The need to afford adequate deterrence is paramount in threats cases because of the ease with which they can be committed in the Internet area. The number of threats posted by the defendant easily supports this notion. Unsurprisingly, given the ease of committing these crimes and the difficulty in catching the perpetrators,

threats are an ever-increasing drain on law enforcement resources. Data from the Justice Department shows that in 2014, for example, the federal government charged 159 defendants with some form of threat-related offense — and the figure stayed well below 200 for the next five years. By 2019, however, the number of threat-related defendants had spiked to 243, and it has stayed high. There have been 242 people charged federally in threat cases in 2022, according to Justice Department figures, and 222 were charged in 2023. Overall, the most recent five-year period saw the number of federally charged threat cases rise 47 percent compared with the preceding five-year period. *See* https://www.washingtonpost.com/national-security/2024/01/12/threats-swatting-fbi-justice-prosecutions.

The United States has seen a corresponding increase here in the Middle District of Florida, with the U.S. Attorney's Office prosecuting numerous threat cases. Between 2023 and February of 2024, this District alone charged at least 27 threat-related cases. *See* U.S. Attorney Highlights Recent Prosecutions of True Threats, https://www.justice.gov/usao-mdfl/pr/us-attorney-highlights-recent-prosecutions-true-threats-and-hate-crimes-cases-will. As one example, in August 2024, defendant Stephen Thorn was sentenced to a term of imprisonment of five years after pleading guilty to making five threatening phone calls in a single day to a federal judge's chambers. *United States v. Thorn*, 8:23-cr-361-WFJ-CPT, Docs. 65, 68. Significant sentences like that imposed in the Thorn case are necessary to provide adequate deterrence.

## CONCLUSION

The Defendant's criminal conduct caused significant fear in Victim 1, Minor Victim 1, and Minor Victim 2. This was not a one-off lapse of judgment as evidenced by the number of threats and the defendant's other online posts. The defendant's criminal conduct was intentional and frequent. For the foregoing reasons, the United States respectfully requests that the Court impose a guidelines sentence of 41 months in prison.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: /s/ Courtney D. Richardson-Jones
Courtney D. Richardson-Jones
Assistant United States Attorney
Florida Bar No.: 91608
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail:courtney.richardson-Jones@usdoj.gov

**U.S. v. EDWIN GUERRERO** **Case No. 6:25-cr-00278-AGM-RMN**

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

James Skuthan, Esq.
Attorney for Defendant

/s/Courtney D. Richardson-Jones

Courtney D. Richardson-Jones
Assistant United States Attorney
Florida Bar No.: 91608
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7643
E-mail:courtney.richardson-jones@usdoj.gov